T. T. LAWRENCE, T/A C & T Lunchette, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

No. 79–0004–CIV–2.

United States District Court,
E. D. North Carolina,
Elizabeth City Division.

March 5, 1980.

Thomas L. Jones, Murfreesboro, N. C., for plaintiff.

George M. Anderson, U. S. Atty., Raleigh, N. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DUPREE, Chief Judge.

This action which was filed pursuant to 7 U.S.C. § 2022 for judicial review of the final administrative decision of the Food and Nutrition Service of the United States Department of Agriculture dated January 15, 1979 disqualifying plaintiff from participation in the Food Stamp Program for a period of one year came on for trial before the court without a jury at Elizabeth City on February 26, 1980. The plaintiff, T. T. Lawrence, T/A C & T Lunchette, was present in court and through his counsel, Thomas L. Jones, Esq., and the defendants were represented by Assistant United States Attorney, Abraham Penn Jones, Esq. The contested issues for trial by the court were stated in the order on final pre–trial conference dated February 1, 1980 and agreed to by counsel as follows:

"1. Whether the Plaintiff violated Food Stamp Program regulations found at 7 C.F.R. 270, *et seq.* in that he sold during August, September, and October, 1977, ineligible items for food stamps in violation of the Food Stamp Act of 1964, as amended, 7 U.S.C. 2011 *et seq.*, specifically at § 2023 and regulations at 7 C.F.R. 270.

"2. Whether the administrative penalty applied to Plaintiff was arbitrary and capricious or without justification in fact so as to warrant modification of its terms."

On the basis of the stipulated facts, the evidence of the parties offered and accepted in open court and the argument of counsel the court now makes the following

## FINDINGS OF FACTS

1. The plaintiff, T. T. Lawrence, is the owner and operator of a small grocery store located in the Village of Mapleton in Hertford County, North Carolina, and since June, 1973, the plaintiff has been authorized to participate in the program by accepting food stamps lawfully issued to his customers by appropriate authority.

2. A substantial portion of plaintiff's customers have been elderly and financially disadvantaged citizens residing in the community where the store is located, and plaintiff's store is the only one within four miles of the Village of Mapleton which is authorized to accept food stamps.

3. Following the plaintiff's authorization to participate in the Food Stamp Program he was furnished with the written program regulations and a letter calling his attention to the importance of strict compliance with the program's rules and regulations. Program personnel also visited with the plaintiff on several occasions prior to 1975 for the purpose of acquainting him with the rules and regulations and impressing upon him the necessity for strict compliance therewith.

4. The sale by a merchant to a customer of non–food items such as tobacco, gasoline, soap, etc., is violative of the statutes and the regulations. Called as a witness for himself the plaintiff has acknowledged that he was acquainted with the law and regulations in this regard.

5. In March of 1975 Paula F. Kermon, a representative of the Department of Agriculture, having been alerted to what appeared to be an unusually high percentage of food stamp sales being made by the plaintiff, visited his store and personally observed what appeared to her to be sales of non–food items and the issuance of prohibited credits. She discussed the apparent violations with the plaintiff and again cautioned him against engaging in such prohibited practices. Plaintiff denied any violations.

6. During the following three months Ms. Kermon observed the plaintiff's food stamp redemption ratio and noting no appreciable change in plaintiff's redemption

rate she requested an investigation of the plaintiff's store in August of 1975.

7. The case was accepted by the Department for investigation in September, 1975, but for reasons not exactly clear to the court the actual investigation was not commenced until the late summer of 1977 when Ms. Gerald Holt, at that time a compliance specialist with the USDA Food Stamp Program, retained the services of one Miranda Spruill and her mother, Evelyn Frances King, designated as "aides" to make undercover purchases at plaintiff's store in order to ascertain if he was in fact selling non–food items in exchange for food stamps.

8. These "buys" were made by Ms. Spruill and Ms. King on five separate occasions during the months of August, September and October of 1977, and on each occasion the plaintiff accepted food stamps in payment for items clearly not eligible for purchase with such stamps. Of a total of thirty–three items purchased by these undercover agents on these five occasions thirteen were ineligible and included $6.00 worth of gasoline, three cartons of cigarettes, a broom, cleaning materials, chewing tobacco, aluminum foil, paper products and toilet articles. In addition cash as change was returned by the plaintiff to the purchasers on five occasions totaling $1.83, and this, also, constituted a violation of the regulations as they then existed.

9. Confronted with these facts the plaintiff simply denied any violation of the law, but in the face of the uncontradicted proof of these violations the plaintiff was disqualified from further participation in the Food Stamp Program for a period of one year.

10. Thereafter, this action was filed, and by agreement of counsel implementation of the Department's disqualification order was stayed pending trial of the case before this court.

11. At the trial the plaintiff has offered the testimony of several of his customers from which the court finds as a fact that a substantial portion of plaintiff's customers are economically disadvantaged, that they are food stamp recipients, that plaintiff's store is the only one reasonably available to them since many of them are without means of transportation to the nearby towns where food stamps could be exchanged and that if the plaintiff's qualification for participation in the Food Stamp Program is rescinded, it will result in considerable inconvenience to many of plaintiff's customers.

12. Except for confirming the facts set forth in the next preceding paragraph plaintiff's testimony has not been particularly helpful to him. He professes to have only a vague recollection of the many visits which were paid him by agents of the USDA to explain and enlist his cooperation in compliance with the regulations. With respect to the sales made to the undercover agents mentioned above plaintiff simply professes not to have any recollection of any such transactions, and he continues to deny them.

13. In view of the record which has now been compiled the court is constrained to find by a preponderance of the evidence that the plaintiff has over the period of time involved in the Department's investigation made repeated sales of non–food items in exchange for food stamps and that he has done so knowingly or at least in a grossly negligent disregard of the facts.

On the basis of the foregoing findings of fact the court makes the following

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the action under 7 U.S.C. § 2022 and the regulations of the United States Department of Agriculture relating to the Food Stamp Program.

2. The plaintiff violated the Food Stamp Program regulations during August, September and October, 1977, by selling non–food items which were ineligible for sale under the program in violation of the

Food Stamp Act of 1964, as amended, 7 U.S.C. § 2011, *et seq.*, and 7 C.F.R. § 270.

 3. Under the regulations the Department is authorized to impose an administrative penalty disqualifying the plaintiff from participation in the Food Stamp Program for a period up to three years. In this case a penalty of a one–year disqualification has been imposed. In view of the record the court is of opinion and so holds that this one–year penalty was not arbitrary and capricious or without justification in fact, and the court therefore declines to modify the terms of the disqualification. *Cross v. United States,* 512 F.2d 1212, 1218 (4th Cir. 1975); 7 C.F.R. § 272.6.

An appropriate judgment will be entered.